Argued and submitted December 22, 2020, reversed and remanded for a new trial March 16, petition for review denied July 28, 2022 (370 Or 197)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER JOSEPH PELTIER,
*Defendant-Appellant.*

Washington County Circuit Court
18CR46418; A169723

508 P3d 567

In this criminal case, defendant appeals from a judgment of conviction for fourth-degree assault, ORS 163.160. He challenges the trial court's conclusion that he waived his right to be present at trial when he remained silently in his cell during pretrial hearings. *Held*: The Court of Appeals concluded that there was insufficient evidence to support a determination that, at the time of the purported waiver, defendant knowingly waived his right to be present at trial. A knowing waiver of the right to be present required, at least, that defendant understood that trial would proceed without him, and the risks and consequences associated with that absence. Here, the record did not support that such information had been fully and accurately conveyed to defendant. Accordingly, the trial court erred in concluding that defendant validly waived his right to be present at trial.

Reversed and remanded for a new trial.

Theodore E. Sims, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Lauren P. Robertson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Reversed and remanded for a new trial.

**SHORR, J.**

In this criminal appeal, we must determine whether defendant, who was silent and unresponsive to attempts at communication from his attorney and jail staff, waived his right to be present at trial. We conclude that there was insufficient evidence for the trial court to decide that defendant intentionally and knowingly waived his right to be present. Therefore, we reverse and remand for a new trial.

The relevant facts are largely procedural and, for purposes of this appeal, undisputed. Defendant was arrested and charged with fourth-degree assault. Defendant was appointed counsel and held in custody. Following his arraignment, defendant did not attend any pretrial hearings. The trial court ordered defendant released, but he did not respond to jail deputies' requests for him to sign the release agreement. As a result, he stayed in custody. While in custody, defendant refused his appointed counsel's attempts to visit him in the jail. Defense counsel learned from jail deputies that defendant was unresponsive and spent the majority of his time in silence. Defendant was also housed in the jail's Medical Observation Unit. Because of defendant's behavior in the jail, defense counsel moved for a determination of defendant's fitness to proceed. In a supporting affidavit, defense counsel explained that defendant's previously appointed attorneys had raised the same concerns about defendant's behavior. In response to those earlier concerns, the court had ordered an evaluation and had found defendant able to aid and assist.

The trial court granted the motion for another evaluation of defendant's ability to aid and assist and committed defendant to the Oregon State Hospital for a 30-day examination period. At the state hospital, Dr. Best evaluated defendant. In her written report to the court, Best opined that defendant was capable of aiding and assisting in his own defense. According to the report, defendant was unresponsive during his interview, so Best's conclusions were based on "collateral information," including records of defendant's previous hospitalizations and evaluations and discussions with hospital staff. Best wrote that defendant had a history of hospitalization, self-harming behaviors,

mental health concerns related to his unresponsiveness in jail, and that defendant had been placed on suicide watch several times. However, jail records also demonstrated defendant's "ability to socially engage with others in an appropriate manner when making requests for assistance or desired items." According to Best, "During all of his OSH hospitalizations, malingering has either been fully diagnosed or suspected." Ultimately, Best concluded that defendant's unresponsiveness "was willful and volitional" rather than the result of a qualifying mental disorder. Based on Best's report, the court found defendant able to aid and assist.

Several weeks before trial, defense counsel renewed her motion for a determination of defendant's fitness to proceed, on the ground that defendant remained unresponsive and would "stare blankly at the wall of his jail cell" when asked to visit with his attorney. During a "cell-side" visit, defendant lay on his cot without moving or responding while his defense counsel attempted to engage with him for "approximately twenty minutes."

The morning of trial, jail deputies informed the court that defendant was unresponsive and would not leave his cell. Noting that her renewed aid and assist motion was still pending before the court, defense counsel argued that his absence was not volitional, and that defendant was not competent to stand trial. The court denied the motion, concluding that defendant was "remarkably stubborn" and was "making a voluntary choice not to cooperate, as opposed to being mentally unable to do so."

The court next addressed defendant's absence from trial. Defense counsel objected to trying defendant *in absentia* but did not want defendant forcibly brought to the court. Officer Danner, who was responsible for arranging defendant's transportation to court, was present in the courtroom. The court spoke with Officer Danner about how to proceed.

> "THE COURT:   I think we need to give an effort. *** [W]e just need to make it clear to him that, if he doesn't come, that the proceedings are going to continue in his absence. Maybe he'll rethink the matter.

"OFFICER DANNER:   Regarding that, Judge, would you like us to verbally tell him that and then attempt to bring him over if he doesn't resist us carrying him in?

"* * * * *

"THE COURT:   I have concluded that there is no point in having jail staff drag him over here if he doesn't want to join us.

"So what we need to do is establish on the record that he has been invited to join the proceedings and that he's chosen not to participate."

The court then directed Danner to do the following:

"THE COURT:   Let's have him contacted again and specifically told that the trial needs to proceed, that he has every right to participate, that we're more than happy to bring him over without any physical exertion on his part if he should choose not to walk or do anything else. All he has to do is nod his head and tell us that he wants to come."

During a brief recess, Danner spoke with Deputy Star, who worked in the Medical Observation Unit where defendant was held. Danner reported to the court that he asked Star to "inform [defendant] that we are proceeding with trial, he has an absolute right to be here, if he wanted us to come get him, we would be more than happy to do so * * *." Danner was sworn in as a witness. Danner testified that Star relayed that message to defendant, but defendant did not respond to Star and stared at his cell wall. Danner also provided the following testimony in response to the court's questions.

"THE COURT:   * * * So tell us what [defendant] has said and done that would cause you to believe or disbelieve that he wishes to be here or not be here.

"[OFFICER DANNER]:   Well, starting at 8:00 this morning, Deputy Harm and I were tasked with bringing [defendant] here to court for the purposes of trial.

"At approximately 9:00 a.m., I approached his cell in Medical Observation Unit * * *. I opened the door and spoke to—or I should say spoke at [defendant] regarding his right to be here, and we're more than willing to bring him over safely and securely.

"He did look at me. He was awake and alert, but he did not respond to any of my—to anything I said to him.

"At which point I gave him a couple more chances to acknowledge and participate, at which point in time he just continued laying on his mattress.

"THE COURT:   Did he make eye contact with you?

"[OFFICER DANNER]:   He did make eye contact with me.

"THE COURT:   All right. Any indication that he had any trouble hearing you?

"[OFFICER DANNER]:   No.

"THE COURT: Were there any other communica-tion[s] on any subject today where you got a response from him?

"[OFFICER DANNER]:   Where I got a response, no.

"THE COURT:   Where other jail staff got a response from him?

"[OFFICER DANNER]:   Yes, Judge. Earlier in the day, Deputy Josh Star, who is currently assigned and working in the Medical Observation Unit, asked [defendant] if he wanted to come out of his cell. We refer to it at the jail as 'out time.' It's an opportunity for them to recreate, shower, take care of any *** business that they may do.

"[Defendant] responded with a head nod in the negative. So his head would be going left to right as indicating no."

The court asked Danner several more questions relating to defendant's ability to move and walk, and his habits in the jail. Danner confirmed that defendant was physically able to walk around, that he was eating meals, and that he did not need assistance with basic functioning.

Following Danner's testimony, the court concluded that defendant was "simply refusing to participate" and indi-cated that it would proceed with trial in defendant's absence. Both defense counsel and the state objected. In explaining its decision, the court made the following findings.

"THE COURT:   I think we're splitting hairs here. He's told he can come. He's making no effort to do so. He's had

multiple evaluations, and the professional medical psychiatric conclusion has been that he suffers not from mental illness but from a severe case of stubbornness, which is his right. He doesn't have to participate, but he is able to participate.

"And I think, under these circumstances, we don't have much choice but to proceed in his absence."

The case proceeded to trial, and defendant was convicted by a jury of fourth-degree assault. Defendant appeals from the resulting judgment of conviction.

On appeal, defendant contends that the court erred in concluding that defendant validly waived his right to be present at trial by remaining silently in his cell. In response, the state argues that defendant forfeited his right to be present by engaging in misconduct, or in the alternative, impliedly waived his right to be present when he willfully ignored the deputies' attempts to bring him to trial. Whether a defendant has knowingly and intentionally waived his right to be present at trial is a question of law that we review for legal error. *State v. Langley*, 351 Or 652, 666, 273 P3d 901 (2012) (describing standard for waiver of right to counsel); *State v. Jacobson*, 296 Or App 87, 91-92, 437 P3d 243 (2019) (explaining that same principles apply to waivers of right to counsel as to waivers of right to be present).

As a preliminary matter, defendant makes his argument under both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[1] Defendant and the state cite caselaw under both constitutional provisions. We proceed under Article I, section 11. To the extent we rely on cases applying the Sixth

---

[1] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel[.]"

The federal constitutional right to be present at trial derives from the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen*, 397 US 337, 338, 90 S Ct 1057, 25 L Ed 2d 353 (1970). The Confrontation Clause of the Sixth Amendment provides, in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him[.]"

Amendment, those cases merely inform our general understanding of the principles associated with the right to be present at trial.

"A criminal defendant's right to appear at trial is a fundamental constitutional right." *Jacobson*, 296 Or App at 91. However, "the right of the defendant to appear at trial may be waived." *Id.* "Like the waiver of the right to counsel, the waiver of the right to appear at trial must be an intentional relinquishment of a known right, based on what the defendant knows and understands." *Id.* at 91-92. Whether there has been an "intentional relinquishment or abandonment of a known right or privilege will depend on the particular circumstances of each case, including the defendant's age, education, experience, and mental capacity" as well as the charge, possible defenses, and other relevant factors. *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992).

In *Jacobson*, we explained that the same principles apply to waivers of the right to be present as to waivers of the right to counsel. Accordingly, a valid waiver of the right to be present has two components. The "'intentional' component of a waiver *** refers to the defendant's intent to waive the right." *Jacobson*, 296 Or App at 92. "Encompassed within the 'intentional' component is the requirement that the choice must be 'voluntary.'" *Meyrick*, 313 Or at 132 n 8. Generally, "in the absence of coercion, most intentional acts are voluntary acts." *Jacobson*, 296 Or App at 92.

The "'known right' component of a waiver 'refers to the defendant's knowledge and understanding of the right.'" *Id.* at 94 (quoting *Meyrick*, 313 Or at 132 n 8). Whether a waiver is knowing "is the more expansive of the two components, because a defendant's knowledge and understanding of the right to counsel" or the right to be present "may turn on factors other than what the defendant tells the court, such as the defendant's age and education." *Id.* at 94-95. To knowingly waive the right to counsel, a defendant must be aware of the right to counsel and also understand the risks inherent in self-representation. Applying that principle to the right to be present, a defendant must be aware of that right and understand the risks inherent in a trial *in absentia*. A "'colloquy on the record between the court and

the defendant wherein the court, in some fashion, explains the risks of [the waiver]' is the preferred method of assuring that a waiver was made knowingly." *State v. Guerrero*, 277 Or App 837, 847, 373 P3d 1127 (2016) (quoting *Meyrick*, 313 Or at 133). But we will also affirm a trial court's acceptance of a defendant's waiver where, "under the totality of the circumstances, the record reflects that the defendant knew of the right [to be present] and understood the risks" associated with the defendant's absence at trial. *State v. Easter*, 241 Or App 574, 584, 249 P3d 991 (2011).

For example, in *Jacobson* the defendant signed a waiver of appearance form. The form stated that the defendant was required to appear for all scheduled hearings and trial and warned the defendant that if he failed to appear, the trial might proceed in his absence. 296 Or App at 88-89. The defendant failed to appear for his trial, and the case was tried to a jury in his absence. *Id.* at 89. We concluded that the defendant did not make an intentional and knowing waiver. With respect to the known right component we explained that "[t]he court did not inquire whether defendant understood that, by signing the form, he was agreeing that the trial would proceed in his absence if he did not appear. The court did not explain the impact on defendant's other rights if he failed to appear at trial." *Id.* at 95. We distinguished the circumstances from those in another case, *State v. Peters*, 119 Or App 269, 850 P2d 393 (1993), where the defendant signed a conditional release agreement that provided the trial could proceed in his absence if he failed to appear. In *Peters*, the trial court admonished the defendant that trial could proceed in his absence and explained "the impact on the defendant's other rights if he failed to appear at trial." *Jacobson*, 296 Or App at 93 (citing *Peters*, 119 Or App at 274). The *Peters* defendant was also "counseled by his lawyer about the waiver and expressly acknowledged that he had been advised against signing it." *Id.* In *Jacobson*, by contrast, the record did not show that the defendant "signed the form with knowledge and an understanding of his right." *Id.* at 95.

As noted, the state does not contend there was express waiver. Nor could it reasonably do so here, where

defendant did not speak at all, let alone state a desire to waive his right. Instead, the state contends that defendant waived his right to be present by engaging in misconduct, or in the alternative, that defendant made a valid waiver by willfully declining to respond to the deputies' attempts to bring him to court. That is, the state argues that, even if we conclude that defendant's behavior was not misconduct, his conduct constituted an intentional and knowing waiver. Neither party has cited a case addressing a defendant's loss of the right to be present due to misconduct under Article I, section 11, nor could we find any. Because the relevant principles and analyses are similar, we summarize the following Oregon cases concerning the loss of the Sixth Amendment right to be present by misconduct. *See Meyrick*, 313 Or at 137-38 (reaching same conclusion under Sixth Amendment and Article I, section 11); *Easter*, 241 Or App at 586 (same).

A defendant may lose the Sixth Amendment right to be present by engaging in certain disruptive misconduct during a trial. In *State v. Lacey*, the defendant repeatedly interrupted the court and his appointed attorney during pretrial hearings and was held in contempt for successive violations of the court's orders for the defendant to be quiet and allow his attorney to speak. 364 Or 171, 174, 431 P3d 400 (2018), *cert den*, 139 S Ct 1590 (2019). The day before trial, the defendant's attorney asked to withdraw as the defendant's counsel because the defendant wanted to represent himself and insisted on raising a defense that had been rejected at a prior hearing. *Id.* The trial court encouraged the defendant to continue working with his attorney, and explained that, if the defendant proceeded *pro se* and engaged in disruptive conduct like he had during the pretrial hearings, he would be removed from the courtroom and the trial would continue without him or defense counsel. *Id.* at 175. The trial court also advised the defendant of the risks of self-representation and the defendant chose to represent himself. *Id.* at 176. During the four day trial, the defendant "repeatedly engaged in misconduct by arguing with the trial court after it ruled and by failing to abide by its rulings" and the court reminded the defendant that he would be held in contempt and removed from the courtroom

if he continued. *Id.* On the final day of the trial the defendant again insisted on raising the defense that the court had previously rejected. The defendant "continuously interrupted the court and became defiant and aggressive." *Id.* After warning him that he would be removed, the trial court eventually held the defendant in contempt and had him removed from the courtroom. *Id.* at 177.

The Oregon Supreme Court explained that a defendant "may lose the right to be present if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.* at 185 (internal quotation marks omitted). The court concluded that, by insisting that he would violate the court's order after being warned of the consequences, the defendant "made a knowing and voluntary choice to be removed from the courtroom and leave the defense table empty." *Id.* at 186.

In *State v. Menefee*, the defendant appeared the morning of trial without counsel and refused to answer the court's questions about whether he wanted appointed counsel or to represent himself. 268 Or App 154, 157, 341 P3d 229 (2014). Instead, he insisted that he was not waiving any rights and that the court did not have "jurisdiction" over him. Eventually the court concluded that the defendant was electing to proceed *pro se*. *Id.* The defendant renewed his argument that the court lacked authority over him multiple times, and each time the court rejected the argument. *Id.* at 158-59. The defendant again raised the argument during his opening statement to the jury and continued over the court's attempts to stop him. *Id.* at 160-62. Outside the presence of the jury, the defendant insisted that he would raise his argument again, eventually telling the court that he was "going to speak *** until you throw me out of this courtroom." *Id.* at 164. A colloquy between the court and the defendant then "ultimately devolved into disrespectful and provocative comments." *Id.* The defendant was removed from the courtroom and the trial resumed in the absence of the defendant and defense counsel. *Id.* at 168-69.

On appeal, the defendant argued that his conduct was not sufficiently egregious to warrant removal. We concluded that the defendant's conduct warranted removal, because it was disruptive, repeated, and at times abusive. *Id.* at 181-82. And, because the defendant "continued to make the same argument despite the court's multiple rulings and admonishments," and promised to make that argument at "every opportunity," the trial court permissibly concluded that the defendant's behavior "was aimed at disrupting the proceedings." *Id.* at 178-79. However, we held that the trial court erred in continuing the trial in the defendant's absence, because the defendant "did not forfeit his right to representation when he acted out, and the trial court failed to obtain defendant's waiver of that right." *Id.* at 185.

Explaining the different outcomes in *Lacey* and *Menefee*, the *Lacey* court distinguished *Menefee*, noting that the defendant in *Menefee* was not warned that the trial would proceed in his absence. Therefore, the court explained, the *Menefee* defendant's waiver "may not have been knowingly made, in that he may not have been aware of a critical consequence of the waiver." *Lacey*, 364 Or at 187.

With respect to Article I, section 11, the Oregon Supreme Court has held that a defendant may waive the right to counsel by engaging in misconduct. As noted, we held in *Jacobson* that the same principles apply in assessing the validity of waivers of the right to counsel as of the right to be present. Therefore, we also look to the following cases addressing waiver, or forfeiture, of the Article I, section 11, right to counsel.

In *Langley*, the defendant's trial was delayed multiple times after the trial court removed the defendant's counsel over the defendant's objection, and the defendant refused to cooperate with his new counsel. 351 Or at 655-56. Before trial, the defendant's counsel moved to withdraw, citing the breakdown of the attorney-client relationship. In response, the trial court gave the defendant the choice to proceed with his current counsel or represent himself. *Id.* at 658-59. Noting his discomfort with both options, the defendant declined to make a choice, which the court characterized as an attempt to "manipulate the system." *Id.* at

660. The court then ruled that the defendant would proceed *pro se*.

The Supreme Court first concluded that the defendant had not expressly waived his right to counsel by declining to choose between the options presented by the trial court because "[n]one of defendant's statements to the court expressed such a waiver" and the court "[would] not infer a waiver of a defendant's constitutional right to counsel from a silent record." *Id.* at 668. The court further concluded that the defendant had not waived his right through conduct. The court explained that a "defendant's conduct may serve as a valid waiver so long as the conduct adequately conveys the defendant's knowing and intentional choice to proceed in court without counsel." *Id.* at 669. However, "an advance warning that a repetition of behavior that amounts to misconduct will result in the defendant having to proceed *pro se*," rather than some other consequence, is required. *Id.* at 670. According to the court, no warning of that kind was given to the defendant. *Id.* at 671.

In evaluating the defendant's conduct, the court distinguished between the defendant's "noncooperation with appointed counsel and the kind of misconduct that may establish a valid waiver by conduct." *Id.* at 670. The court concluded that the defendant's noncooperation had not risen to the level of misconduct that would support a conclusion of waiver. Further, the court held that the defendant did not engage in misconduct by refusing to make the choice proposed by the trial court. *Id.* at 673-74.

In *Guerrero*, each of the defendant's three attorneys withdrew after the breakdown of their relationships with the defendant. 277 Or App at 840. Before appointing the third attorney, the trial court warned the defendant that this was the defendant's "last court-appointed attorney." *Id.* In moving to withdraw, the defendant's third attorney attributed the breakdown, in part, to the defendant's desire to testify, which caused the attorney to have ethical concerns. *Id.* Noting its earlier warning, the court gave the defendant a choice to abstain from testifying and proceed to trial with counsel or to testify and represent himself. *Id.* at 842. The court then explained various aspects of the trial

proceedings. *Id.* The defendant elected to represent himself and the trial court found that the defendant had impliedly waived his right to counsel. *Id.* at 843.

Assuming without deciding that the trial court's warning that his third attorney was his last was sufficient to apprise him of the possibility of proceeding to trial without counsel, and that the defendant's actions constituted misconduct, we nevertheless concluded that the defendant did not knowingly waive his right to counsel. *Id.* at 844-45. We distinguished between the requirements that a defendant be warned that further misconduct could result in waiver of counsel and that a defendant be apprised of the right to counsel and the risks of self-representation. *Id.* at 846-47. We further explained that "for the advance warning requirement to be meaningful, a defendant must understand the risks and disadvantages of self-representation *before* he engages in the additional misconduct that forms the predicate for a finding of implied waiver." *Id.* at 846 (emphasis in original). We assumed that the defendant had been sufficiently warned of the potential consequences of further misconduct but concluded that the defendant had not been sufficiently apprised of his right to counsel and the risks of self-representation. *Id.* at 848. Although the court had explained the stages of trial proceedings, that explanation occurred after the defendant had engaged in the purported misconduct. *Id.* at 848 n 5. And, we explained, the record contained insufficient evidence to conclude that the defendant's experience with the criminal justice system supported a finding that he understood the risks of self-representation. *Id.* at 850.

Applying the principles in the above cases to the present circumstances, we conclude that a defendant may waive the right to be present by misconduct. We note, however, that defendant's conduct here is not the kind of disruptive misconduct that took place in *Lacey* and *Menefee*. In those cases, the defendants consistently interrupted the attorneys and the trial courts, refused to adhere to the courts' rulings, and behaved aggressively such that the trial could not proceed in their presence. Defendant's conduct here was quite different. But, in *Lacey* and *Menefee*, we also emphasized

that a defendant's loss of the right to be present must be the product a knowing and voluntary choice to engage in misconduct. That was also true in *Langley*, and in *Guerrero*, where we explained that, to constitute an implied waiver of the right to counsel, a defendant's conduct must adequately convey the defendant's intentional choice to engage in that conduct in spite of the defendant's knowledge that it would result in the loss of the right and the risks associated with self-representation.

The state's arguments and the above cases also raise questions about the difference between the loss of a right by misconduct and an implied waiver of a right. Those are distinct concepts. The latter recognizes the possibility of a constitutional waiver wherein the defendant's conduct conveys an intentional and knowing waiver but does not constitute misconduct. *Langley* and *Guerrero* seemingly collapsed those concepts, in that they referred to the existence of implied waivers "by conduct," but in each case treated misconduct as a necessary element of such waivers. In any case, we understand from the caselaw that a waiver—whether express, implied by conduct or forfeited by misconduct—must be made knowingly. We conclude that the state failed to establish that here. That is, we need not decide whether defendant's conduct qualifies as misconduct or whether we recognize implied waivers without misconduct, because there is insufficient evidence that defendant's waiver was knowing.

As we have stated, the touchstone of the inquiry is whether there has been "an intentional relinquishment of a known right, based on what the defendant knows and understands." *Jacobson*, 296 Or App at 91-92. A defendant must at least understand that trial will proceed without the defendant, and the risks and consequences associated with that absence. As noted, whether there has been such a relinquishment depends on the particular circumstances of each case. *Meyrick*, 313 Or at 132.

With that in mind, we note the circumstances that demonstrate the absence from the record of anything showing that defendant intentionally relinquished a known right to participate in trial based on what he knew and

understood. We do not mean to suggest, however, that there is any one way to make an appropriate record. We recognize, and discuss later, the difficulties that this particular defendant presented the court in facilitating the creation of that record, but we still must be able to discern defendant's waiver from the record.

To begin with, there was no colloquy on the record wherein the trial court warned defendant of the risks of failing to appear at his own trial or the potential impacts on his other constitutional rights. Although the trial court explained that "we just need to make it clear to him that, if he doesn't come, that the proceedings are going to continue in his absence," its directive to Danner was to inform defendant that "the trial needs to proceed, that he has every right to participate, that we're more than happy to bring him over." We are not convinced from that directive, which was communicated by Danner to Star, and then by Star to defendant, that defendant was actually told that the trial would proceed without him if he did not respond.

Moreover, Star did not testify under oath or even speak to the court about what information would satisfy the court that defendant not only knew of his right, but also knew of the risks of failing to attend his trial, including the effects on his other rights. There is no evidence that the deputy who spoke with defendant understood anything about a defendant's constitutional trial rights beyond the basic notion that defendant had the right to be in the courtroom during trial. Nor was defendant's attorney present with him to explain the risks and consequences.

That Best's report found defendant able to aid and assist is not dispositive—whether a defendant is able to aid and assist counsel is a different question than whether a defendant knows of the right to be present and the attendant risks of forfeiting that right. And although the trial court's finding that defendant's absence was willful was supported by evidence in the record, that finding was only sufficient to support a conclusion that the waiver was intentional. That defendant voluntarily declined to attend trial does not show that he understood the risks and consequences of waiving his right to be present. Nor does defendant's history with

the criminal justice system, as the state suggests, support a conclusion that defendant knowingly waived his right. *See e.g.*, *State v. Massey*, 160 Or App 197, 981 P2d 352 (1999) (court would not infer from the record that the defendant understood the risks of self-representation because he had worked as a paralegal, had been involved in civil lawsuits, and had been represented by several lawyers in the present case); *Guerrero*, 277 Or App at 850 n 8 (defendant's 12 prior convictions not sufficient to support finding that he adequately understood the risks of self-representation, where the record was silent as to whether any of those convictions had gone to trial).

To summarize, there was insufficient evidence to support a determination that, at the time of the purported waiver, defendant knowingly waived his right to be present at trial. Therefore, the trial court erred in deciding that defendant waived his right to be present and in proceeding to trial in his absence.

The state concedes that that error was not harmless, and we accept the state's concession. Defendant was absent for every critical stage of the trial and was denied the opportunity to assist his attorney in selecting the jury and in confronting witnesses, among other things.[2] Because we cannot say how defendant's presence would have affected the outcome of the trial, we conclude that his erroneous absence was not harmless. *See State v. Erb*, 256 Or App 416, 427, 300 P3d 270 (2013) (trial court's error in allowing the defendant to proceed to trial without counsel was not harmless where we were unable to tell what the outcome would have been if the defendant had been represented by counsel).

We recognize the difficulty the trial court faced here. In addition to the significant time constraints affecting trial courts, the court here was confronted with a defendant who, by all accounts, would not respond to any warnings or advice, from the court or otherwise, and remained

---

[2] The state points to additional evidence demonstrating that defendant knowingly waived his right to be present on the second day of trial. We do not address the relevance of that evidence because we conclude that, even if defendant validly waived his right to appear on the second day, defendant's erroneous absence on the first day of trial would nonetheless warrant reversal.

unresponsive in his cell. But we are normally reluctant to conclude that fundamental rights have been waived. *Jacobson*, 296 Or App at 91. That is especially true here, where defendant, who had a history of mental health issues, did not affirmatively waive his right. Faced with a challenging situation like the one here, a trial court must at least ensure that a defendant has been accurately informed of the fact that the trial will continue in his absence, as well as the risks and consequences of that absence. There must be a record from which we can tell that information has been conveyed to the defendant. What measures will suffice will depend on who is delivering the information. Greater care in ensuring that warnings and advice are fully and accurately delivered is required where the person repeating that information lacks legal experience.

In sum, we conclude that the state failed to establish that defendant knowingly waived his right to be present. The trial court erred in concluding that defendant waived his right to be present for trial and that error was not harmless. Accordingly, we reverse and remand for a new trial.

Reversed and remanded for a new trial.