Argued and submitted August 19, 1987, affirmed April 6, 1988

## STATE OF OREGON,
*Respondent,*

*v.*

## ANWAR HUSSIN,
aka Clarence Lester Lee,
*Appellant.*

(C 86-08-33600; CA A42992)

752 P2d 337

David K. Allen, Portland, argued the cause and filed the brief for appellant.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals a conviction of conspiracy to commit theft in the first degree. ORS 161.450. The court appointed counsel on August 25, 1986. ORS 135.045; ORS 135.050. The record discloses that, after pre-trial disclosure by both parties, appointed counsel certified that discussions had occurred between the trial attorneys, that defendant had been advised of a final plea bargain offer, that counsel had filed a motion to suppress evidence and requested a jury trial and that the case was ready for trial. On October 9, 1986, at defendant's request, the court substituted a second counsel, who represented defendant for about five weeks before the court terminated the appointment. Defendant assigns as errors that the court denied his pre-trial motion to substitute a third appointed counsel and that, at the time of trial, it again denied his motion to appoint a third counsel. He asserts his right to the assistance of counsel under Article I, section 11 of the Oregon Constitution and the Sixth Amendment. We affirm.

Defendant was dissatisfied with both of his appointed counsel because, as defendant told the court on November 17, 1986, they "don't have any knowledge of the Masonic Order, of the Masonic Body. They don't have any knowledge of degree within the Body." He continued:

"DEFENDANT:   I'd like to ask you a question. Have you kissed the Blarney Stone? Are you prepared to even support your hand and take the trial—

"COURT:   Look, do you want a lawyer or don't you want a lawyer?

"DEFENDANT:   Yes, I want a lawyer. This lawyer here tells me he has no knowledge of the Mas—

"COURT:   What has that got to do with the charge you are sentenced for?

"DEFENDANT:   I'm trying to tell you. He doesn't even know the working and all of the Masonic. If he don't know that, how can he intend—if he's going to represent me, he doesn't have any biblical knowledge.

"COURT:   Look, you get Mr. * * * or you represent yourself. Your choice. Make it now.

"DEFENDANT:   Would you like to answer my questions?

"COURT:   Make the choice now.

"DEFENDANT:   Have you kissed the Blarney Stone?

"COURT:   Mr. * * *, you are relieved. You are representing yourself."

■ Defendant did not give reasons sufficient to show that his second counsel was "unsuitable," *see* ORS 135.050(1), or that ORS 135.050(5)[1] or either constitution required the court to appoint substitute counsel. There is no basis in the record to question the competency of either appointed counsel. Defendant has not shown that, whether either of his appointed counsel was a Mason, or had knowledge of the "Masonic Order" or "Masonic Body," was material to his competency or "suitability" to represent defendant in this case. *See State v. Pagan,* 80 Or App 65, 68, 721 P2d 859 (1985), *rev den* 301 Or 766 (1986); *State v. Barnett,* 41 Or App 797, 598 P2d 1301, *rev den* 287 Or 641 (1979). Although defendant wanted appointed counsel, he placed conditions on the court's selection which it was not required to accept.

Under the circumstances, the court did not err when it did not inquire more fully whether defendant knowingly, voluntarily and intelligently waived his right to counsel's assistance. Indeed, the question is not whether the court should have inquired further whether defendant knowingly, voluntarily and intelligently decided that he did not want counsel. Defendant stated expressly that he *did* want counsel. Apparently, he understood the importance of counsel's assistance. He had persisted for over a month in rejecting the attorneys that the court had appointed and on wholly insufficient grounds. The court informed defendant that his ground for objection to appointed counsel was insufficient and that he must choose between that counsel and representing himself. Yet defendant persisted. The court was entitled to conclude that further inquiry was pointless.

The court was entitled to limit defendant's choices to proceed with the counsel already appointed or to represent himself. Neither the "interests of justice," ORS 135.050(5), Article I, section 11, nor the Sixth Amendment required, on this record, that the court give defendant a third choice of

---

[1] ORS 135.050(5) provides in part:

"The court having jurisdiction of the case may substitute one appointed counsel for another at any stage of the proceedings when the interests of justice require such substitution."

another appointed counsel. Moreover, the court was entitled to conclude that defendant's choice, among his available options, was to represent himself.

A different judge did not err when he denied defendant's motion for a third appointed counsel just before the trial began in January, 1987. *See State v. Pagan, supra,* 80 Or App at 70; *State v. Barnett, supra,* 41 Or App at 803. He considered the motion and the reason why defendant had already rejected two appointed counsel. By that time, defendant had persisted for at least three months in placing the same inappropriate conditions on the court's selection of counsel. In response to defendant's statement that he needed counsel, that he was "not adequately equipped" to represent himself and that he was "seeking counsel," the court told him expressly that "the state does not have any obligation to seek and find a lawyer susceptible to your wishes." Yet defendant again refused to change his position.[2] The court could

---

[2] The record also contains this exchange:

"COURT: * * * As I understand it, you are going to be representing yourself?

"DEFENDANT: Well, your Honor, I am not adequately equipped to represent myself. I was seeking Counsel, and I have filed a Motion, and I also had a document there explaining what my problem was with Counsel.

"COURT: That's right. You have a right to hire a lawyer. You can hire any lawyer that you want. Then, if you cannot afford a lawyer and can demonstrate that you cannot afford to hire a lawyer, the State will appoint a lawyer for you. That has been done more than once, as I understand.

"The State does not have any obligation to seek and find a lawyer susceptible to your wishes. So, the State has met its obligation on that, and we will be prepared to go to trial. It will be your responsibility to represent yourself. If you decline your representation of attorneys that have been appointed for you—

"DEFENDANT: Your Honor, I never declined representation of attorneys.

"COURT: Is that true or not? Have the lawyers been appointed?

"[PROSECUTING ATTORNEY]: My recollection, Your Honor, was—

"COURT: What happened to [first appointed counsel]?

"[PROSECUTING ATTORNEY]: Mr. * * * was assigned and asked to withdraw.

"COURT: How about [second appointed counsel]? I appointed him personally?

"DEFENDANT: All right, sir. Mr. * * * as I explained to you in the letter that I wrote there, appeared to not have any light.

"COURT: And you discharged him?

"DEFENDANT: He was darkness.

"COURT: And he was discharged from the case; right?

"DEFENDANT: From my understanding, I didn't discharge him from the case.

conclude that defendant knowingly, voluntarily and intelligently continued to place unacceptable conditions with respect to the court's selection of counsel. The court made an independent determination that defendant had chosen to proceed on his own and that it would accept that choice and not delay the trial. It was entitled to make that determination.[3]

Affirmed.

---

So, I don't know how he got discharged.

"I do need counsel in a situation like this. I am not an attorney. I am not adequately equipped.

"* * * * *

"COURT: What happened to [second appointed counsel]; do you know?

"[PROSECUTING ATTORNEY]: Your Honor, my notes reflect that on November 17th, it came up for call after Mr. * * * was appointed as new counsel, and they set that as a new certification date. At that time, Mr. Hussin, as I recall, came forward and indicated to the Court that he was dissatisfied with [the] representation on the basis that he was not given a counsel with light, who did not know certain facts regarding the Masons and certain things which the defendant felt were important to his representation. There was an exchange with—

"COURT: That was Judge Riggs, I believe?

"[PROSECUTING ATTORNEY]: That was Judge Gallagher, is my recollection, Your Honor. There was an exchange between Mr. Hussin and Judge Gallagher where Judge Gallagher indicated that Mr. Hussin had the choice of either representing himself or having Mr. * * *. That choice was put to him several times, and my recollection is that Mr. Hussin decided to represent himself rather than have Mr. * * *.

"COURT: That is what the Order says, too. That is the Order of this case, and I will follow it.

"Mr. Hussin, since you have chosen this path to follow, it will be your responsibility to conduct yourself in correspondence with the rules of this Court, and it will be your responsibility to obey those rules. It will be your responsibility to conduct your own defense."

[3] Neither defendant, nor either of his attorneys, raised an issue below of defendant's competency. Appointed counsel represents defendant here. His brief states that the transcript before Judge Gallagher may "fairly be read" in one of three ways, including that defendant was attempting to manipulate the court system.