Argued and submitted May 28, 2014, reversed and remanded April 27, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANIBOR BEAVER GUERRERO,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1000873; A150999

373 P3d 1127

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals his convictions for first-degree assault, ORS 163.185, and unlawful use of a weapon, ORS 166.220. He assigns error to the trial court's decision to require him to proceed to trial without counsel and to the court's failure to appoint substitute counsel in violation of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[1] Because we conclude that the record is insufficient to support a finding that defendant made a knowing implicit waiver of his right to counsel through misconduct, we reverse and remand for a new trial.

Generally, we review a trial court's decision to grant a motion for withdrawal of counsel for abuse of discretion. *State v. Langley*, 351 Or 652, 666, 273 P3d 901 (2012). However, "[i]f a trial court grants a motion to withdraw and does not appoint substitute counsel, thus requiring the criminal defendant to proceed *pro se*, we review for error of law whether the defendant has knowingly and intentionally waived his or her right to counsel." *Id.*

The pertinent procedural facts are as follows. Defendant's original trial date was set for February 3, 2011. On January 31, defendant's counsel, Kovac, filed a motion to withdraw. On February 2, at the motion hearing, Kovac explained that defendant objected to Kovac's plans to request a postponement of the trial date to further investigate and prepare. Defendant stated, "I have nothing against Mr. Kovac. He's presented himself very well. My—my fear is that he is so slammed that I'm not going to get, you know, adequate counsel from him." After explaining the nature of trial preparation to defendant and pointing out that he was facing 100 months' imprisonment, the trial court denied the motion to withdraw. The case was set over to May 4.

---

[1] Article I, section 11, provides, in part, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall *** have the Assistance of Counsel for his defense." In light of our resolution of this appeal under state law, we do not address defendant's federal constitutional arguments.

On May 4, Kovac moved once more to continue the case to allow further investigation. The court granted that motion and reset the trial date for July 6. The court also scheduled a settlement conference for June 22. At the settlement conference, Kovac moved to withdraw as counsel a second time, citing a breakdown of the attorney-client relationship. The trial court granted Kovac's motion to withdraw and allowed defendant to request a new attorney. The court told defendant, "[W]hen we give you a new lawyer, which I'm happy to do, that is going to require a new trial date undoubtedly."

The trial court appointed Lyons as defendant's second attorney and set the trial over to September 15, with another settlement conference scheduled for September 7. On September 2, however, Lyons moved to withdraw as defendant's counsel. In his affidavit in support of the motion to withdraw, Lyons stated, "[M]y client no longer wants my representation and desires a new attorney. Currently, I believe that our communication and ability to work with one another has irremediably broken down." At the hearing on the motion, defendant added that he wanted a new attorney because Lyons had not kept him updated on the case and stated, "This is not a stall tactic. I need a defense and there's record—there's medical records that have not been given." The trial court noted that it was "pretty unusual for somebody to get sideways with two attorneys" and indicated that defendant might have been "the source of the problem." The court and defendant then had the following exchange:

"THE COURT: * * * [I]f you may recall, we had a conversation when I allowed you to fire Mr. Kovac that suggested that if this happened again you were very possibly going to be trying this case on your own.

"[DEFENDANT]: Well, I'm not—I don't have legal backing to—to—to fight a case myself. With Mr. Kovac, he violated my fast and speedy rights by waiting until 13 days before trial and that's the reason that I tried to fire him, at which time I was denied."

The court denied Lyons's motion to withdraw and instead set over the case to November 1 to allow Lyons more time to prepare for trial. The court then told defendant:

> "You know, we're just not going to let you keep shopping for a lawyer to get one that you—that's going to agree with you. We're required under the law to provide you with a competent attorney. Mr. Lyons absolutely fits the bill 100 percent."

In response, defendant suggested that he was dissatisfied with Lyons's attempt to "plead [him] out." The court explained to defendant that his attorney was ethically required to identify the flaws in his case and was allowed to advise him to accept a plea deal; however, the court also made it clear to defendant that he had a constitutional right to disregard his attorney's advice.

Nevertheless, on October 12, Lyons again moved to withdraw as defendant's counsel. In his supporting affidavit, Lyons stated, "My client has instigated bar proceedings against me, regarding my representation of him in this matter," and "My client will not talk with my investigator or myself." After the hearing on the motion, the court allowed Lyons to withdraw, telling defendant:

> "This is the tipping point. At this point I've made a notation on here. This is your last court-appointed attorney."

The court then asked defendant whether he understood that appointing a new attorney would cause additional delay; defendant acknowledged that he understood.

The trial court appointed Bernstein as defendant's third attorney and then granted defendant's motion to set over the November 1 trial date, resetting the trial for January 24, 2012. On January 23, Bernstein moved to withdraw. In his supporting affidavit, Bernstein averred that defendant had told his investigator that he believed a "conflict of interest had arisen" and that he wanted Bernstein to withdraw. According to Bernstein, defendant's request "came with the implied threat of [d]efendant filing a bar complaint against [him] if [he] did not agree to withdraw." On the day of trial, Bernstein filed a supplemental motion to withdraw and attached a second affidavit, in which he stated that defendant wished to testify on his own behalf and that an "ethical issue" would prohibit him from allowing defendant to take the stand. At the hearing, the court inquired as to the ethical issue:

"THE COURT:  *** And so I—I guess I have some—some additional questions as to *** where things are at with Mr. Bernstein and [defendant]. And if this is a situation where there's an actual ethical conflict or if this is just a—a situation where the testimony may be such that it may, you know, be contrary to what Mr. Bernstein thinks *** could be accepted by any rational *** jury.

"* * * * *

"[DEFENDANT]:  I've come to the realization that there's no way Mr. Bernstein can represent me just by our conversation. There's—he has no confidence in my case as far as being able to represent it with any type of—I don't even know what the exact word I'm—I'm looking for.

"With any gusto, I guess, because the way he sees it he can't ethically challenge a witness, and, you know, try to make them, you know, tell the truth if they are lying because he doesn't believe that they're lying.

"THE COURT:  Anything else you wanted to tell me?

"[DEFENDANT]:  No. I—I will represent myself, sir, but I—I do need time to—to prepare. I'm not prepared to go to trial today if I do have to represent myself.

"THE COURT:  Now, Mr. Bernstein, the—I'm trying to get a little bit of a better understanding as to the bind that you're in having the defendant testify—

"[BERNSTEIN]:  The—the statement that was made to my investigator goes well beyond what Your Honor was asking for the second part of your question. It was—

"* * * * *

"* * * I don't know exactly what I'm allowed to say or not say, but it was—it was unequivocal.

"* * * * *

"THE COURT:  —the—what I need clarification on is whether we're in a situation where if the client testifies and you believe his testimony just—just hypothetically, is just absurd and contrary to all facts and you don't want to have to—

"[BERNSTEIN]: That is not the issue.

"THE COURT: Okay.

"[BERNSTEIN]: We're not close to that. That is not even close.

"* * * *

"* * * It's far more substantial.

"THE COURT: Okay. And then the other thing is whether we're in the situation where the client would be taking the stand and you—you might personally not believe his testimony given the other evidence—

"[BERNSTEIN]: That is not—

"THE COURT: —in the case.

"[BERNSTEIN]: —the issue either, Your Honor."

The trial court declared that an ethical conflict would arise if Bernstein represented defendant and defendant testified. The court noted its earlier warning that defendant's third appointed attorney (Bernstein) would be his last. The court also expressed concern that any future attorneys appointed to represent defendant would be confronted with the same ethical conflict if defendant insisted on testifying. The court then presented defendant with the choice of either (1) proceeding with Bernstein as counsel and not testifying or (2) representing himself and retaining the ability to testify.

In doing so, the court explained to defendant the various aspects of trial proceedings, including *voir dire*, opening statements, direct and cross-examination, evidence, closing arguments, jury instructions, and deliberation. The record reflects that that was the first time in the course of defendant's court appearances that the trial court provided any explicit information about what defendant might encounter if he were to proceed without counsel. Finally, the court stated,

"I cannot help you represent yourself, but I'll tell you what's in bounds and what's out of bounds and you can adjust from there. So knowing that, do you still wish to have Mr. Bernstein relieved from the case?"

Defendant responded, "If I can get a—a file or something I can work with that." The court then made findings that defendant had asked for Bernstein to withdraw and that defendant had waived his right to new appointed counsel.

At that point, the prosecutor asked the court to clarify whether it was finding that defendant explicitly or implicitly waived his right to counsel; the court replied that it was a finding of implicit waiver. The court allowed Bernstein to withdraw based on the ethical conflict, having previously clarified that it would *not* grant the order to withdraw based on defendant's threat of filing a bar complaint against Bernstein.

After having dismissed Bernstein, the court asked defendant a final time whether he wanted a new lawyer. Defendant replied that he wanted a new attorney but that the court had been clear that he would not be getting another one. Defendant concluded, "I would like—I would like a lawyer." The court declined to appoint new counsel.

The trial was continued to February 15, 2012. Defendant represented himself but ultimately did not testify. After a jury trial, defendant was found guilty on both counts.

On appeal, defendant (represented by appellate counsel), raises several different but related arguments. First, defendant argues that the trial court erred in finding that he implicitly waived his right to counsel through misconduct. According to defendant, as a result of that erroneous finding, the trial court improperly forced defendant to choose between proceeding with counsel but forfeiting his right to testify, on the one hand, and retaining his right to testify but proceeding *pro se*, on the other hand. Alternatively, defendant argues that, even if the trial court could have found that defendant *voluntarily* waived his right to counsel as a result of misconduct, that waiver was not done *knowingly* because defendant was not adequately warned of the risks of proceeding without counsel. Finally, defendant argues that the trial court abused its discretion in failing to appoint substitute counsel after it granted Bernstein's motion to withdraw, forcing defendant to represent himself at trial.

The state responds that the trial court did not violate defendant's right to counsel, given defendant's actions involving three different court-appointed attorneys in the year leading up to his trial. The state also contends that, to the extent that defendant waived his right to counsel, defendant's waiver was voluntary, knowing, and intelligent; in support of that point, the state cites defendant's past experience with the criminal justice system, his demonstrated awareness of the seriousness of the charges against him, and the court's illustration of the procedures and risks of self-representation. The state suggests that defendant's expressed desire to have counsel appointed itself shows an awareness of the risks of self-representation. The state also makes a more general argument that the trial court acted within its discretion by refusing to appoint substitute counsel, in light of the trial court's need to balance the right to counsel with the need for judicial efficiency. The state rests that argument on our holdings in *State v. Hussin*, 90 Or App 359, 752 P2d 337 (1988), and *State v. Spry*, 166 Or App 26, 999 P2d 485, *rev den*, 331 Or 244 (2000). Ultimately, the state argues that defendant "chose a course of action that resulted in his self-representation," because, "despite the fact that defendant had been warned that Bernstein was his last attorney, he tried to create ethical issues between himself and counsel in the hopes that it would *require* replacement counsel." (Emphasis in original.)

Although defendant makes several related arguments on appeal, our review of the trial court's decision turns on whether defendant implicitly waived his right to counsel. Assuming, without deciding, that the trial court's warning to defendant that "[t]his is your last court-appointed attorney" was sufficient to apprise him of the possibility of proceeding to trial without counsel if he engaged in further misconduct (because that is the warning the court relied on to later relieve defendant of counsel without appointing substitute counsel),[2] and assuming without deciding that the

[2] Defendant does not contest the adequacy of that warning on appeal, and the dissent explicitly decides that the warning that "[t]his is your last court-appointed attorney" is a sufficient *Langley* warning—that is, enough to provide a constitutionally sufficient basis for a later finding of implied waiver. 277 Or App at 854-55 (DeVore, J., dissenting). That is an issue we assume *without deciding*. That defendant's counsel did not pursue an argument regarding the adequacy of

court was entitled to construe defendant's particular actions as misconduct,[3] we nevertheless conclude that defendant did not "knowingly" waive his right to counsel.

We begin with an overview of the relevant law regarding waiver. A criminal defendant has a constitutional right to be represented by counsel under Article I, section 11, of the Oregon Constitution; however, a defendant may waive that right and proceed to trial without representation. *Langley*, 351 Or at 663, 665. Waiver of the right to counsel must be "voluntarily and intelligently made."[4] *State v. Easter*, 241 Or App 574, 583, 249 P3d 991 (2011). "'Voluntarily' refers to the fact that the waiver is an intentional act that is not coerced," while "intelligently" goes to "a defendant's *knowledge and understanding* of the right to counsel." *State v. Erb*, 256 Or App 416, 421, 300 P3d 270 (2013) (internal quotation marks omitted; emphasis in original). An intelligent waiver of the right to counsel requires more than a general awareness that a lawyer might be helpful but less than knowing all the potential risks of self-representation. *Id.* at 422 ("[I]t is not required that a defendant know and completely appreciate every potential risk of self-representation in his or her case, but a defendant's abstract knowledge that there may be risks or disadvantages of self-representation, without any appreciation of what those risks might be, is insufficient." (Internal quotation marks omitted.)).

In *Langley*, the Supreme Court explained that waiver of the right to counsel can be implied through a

___

that warning does not relieve us of the obligation to decide whether the warning was constitutionally adequate; rather, we need not reach that issue, given our disposition that the court also did not adequately advise defendant of the risks of proceeding without counsel.

[3] Defendant contends that his waiver of the right to counsel was involuntary because he did not engage in misconduct, at least with respect to his third attorney. In essence, defendant argues that, because the trial court granted the third attorney's motion to withdraw on the basis of a perceived ethical conflict, it could not have found that defendant was engaging in continued misconduct. *See Langley*, 351 Or at 672 n 13 ("In most conceivable circumstances, a criminal defendant's expression of objections about appointed counsel or submission of one or more motions to obtain substitute counsel will not constitute misconduct ***. *** Whether circumstances might exist in which a court could infer such a waiver [by misconduct] is a question for another day.").

[4] Oregon courts have used the terms "intelligently" and "knowingly" interchangeably. *Easter*, 241 Or App at 583 n 4.

defendant's conduct "so long as the conduct adequately conveys the defendant's knowing and intentional choice to proceed in court without counsel." 351 Or at 669. To infer such an implied waiver, however, "something different is required than a mere showing that the defendant has engaged in past or present misconduct." *Id.* at 669-70. Specifically, a defendant must have (1) received advance warning that continuation of his behavior would result in being forced to proceed *pro se* and (2) been given a reasonable opportunity to explain himself such that the court is able to consider all sides of the dispute concerning the defendant's legal representation. *Id.* at 670, 673. Implicit in the requirement that the trial court provide advance warning is the understanding that, once a defendant has received such a warning, continued misconduct can be interpreted by the court as an indication of intent to waive counsel. *Cf. United States v. Goldberg*, 67 F3d 1092, 1100 (3rd Cir 1995) ("Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.").

We next observe that, in order for the advance warning requirement to be meaningful, a defendant must understand the risks and disadvantages of self-representation *before* he engages in the additional misconduct that forms the predicate for a finding of implied waiver. Although the Supreme Court did not make that point expressly in *Langley*, it necessarily follows from the court's analysis. That is, the premise of *Langley* is that a defendant who engages in further misconduct *after* being warned of its consequences (being forced to proceed *pro se*) may be deemed to have "understood" those consequences; that premise would not ring true if a defendant had no appreciation of the right to counsel and the risks of self-representation.

Here, defendant acknowledges that he was advised by the trial court that his continued misconduct could result in waiver of the right to counsel, but he argues that that warning was insufficient to apprise him of the *risks* of self-representation, and, as a result, defendant's purported waiver was not "knowing." However, defendant's argument fails to draw a clear distinction between the requirement

that a defendant be warned that further misconduct could result in waiver of counsel and the requirement that a defendant be apprised of the right to counsel and the risks of self-representation. Those are two distinct requirements. The analysis that follows focuses solely on the latter because, as noted, we assume, without deciding, that defendant was sufficiently warned of the possibility of proceeding to trial without counsel if he engaged in continued misconduct.

In *State v. Meyrick*, 313 Or 125, 133, 831 P2d 666 (1992), the Supreme Court explained that a "colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation" is the preferred method of assuring that a waiver was made knowingly. Notwithstanding that preference, we have explained that "we will also affirm a trial court's acceptance of a defendant's waiver of the right to counsel where, under the totality of the circumstances, the record reflects that the defendant knew of the right to counsel and understood the risks of self-representation." *Easter*, 241 Or App at 584; *see also Meyrick*, 313 Or at 134 ("The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right."); *Erb*, 256 Or App at 422-23 ("[A] defendant demonstrates *prima facie* error by showing that the trial court allowed him or her to proceed at a critical stage without an attorney and did not determine that he or she was aware of the risks of self-representation. * * * The state may overcome that *prima facie* showing by establishing that, in the totality of the circumstances, the defendant was nonetheless aware of the risks of self-representation." (Internal quotation marks omitted.)). Thus, we may conclude that a defendant has "knowingly" waived his right to counsel if either of two conditions are satisfied: (1) the trial court engages in colloquy on the record with the defendant about the risks associated with self-representation or (2) under the totality of the circumstances, we can determine that the record reflects that the defendant knew of his right to counsel and understood the risks of self-representation.

In this case, at the time that the trial court warned defendant that his third attorney would be his last, the court did nothing further to determine whether defendant sufficiently understood the dangers and disadvantages of self-representation.[5] Thus, we must decide whether, under the totality of the circumstances, defendant nevertheless understood the risks of self-representation at that juncture. On that point, our decision in *Easter* is instructive. In that case, the defendant had "extensive experience with the criminal justice system, including nine felony convictions, at least one of which went to trial." 241 Or App at 584. The defendant was appointed counsel, who represented him throughout trial, until the defendant moved to discharge counsel after the state's closing argument. *Id.* at 576-77. After advising the defendant that discharging his court-appointed attorney would be a "very bad move,"[6] the court agreed to allow the defendant to make his own closing argument. *Id.* at 577, 579. The trial court was also able to convince the defendant to allow his court-appointed attorney to remain in the room as a legal advisor. *Id.* at 578. On appeal, the state conceded that "the trial court did not engage in the kind of colloquy suggested by *Meyrick*" but nevertheless argued that the totality of the circumstances showed that the defendant understood his right to counsel and the risks of self-representation. *Id.* at 584. We agreed with the state, explaining that a defendant's prior experiences with the

---

[5] The trial court did provide defendant with an explanation of the complexities of trial at a later date, immediately before it concluded that defendant had implicitly waived his right to counsel. That explanation, however, was provided to defendant on January 24, 2012, months after he was warned that Bernstein would be his last attorney and *after* defendant had continued a similar pattern of behavior with respect to Bernstein as with his previous two attorneys. As such, the court's later explanation cannot be viewed as having imparted upon defendant the requisite knowledge of the risks of self-representation at the relevant time—that is, before he engaged in further misconduct.

[6] We summarized the warnings given to the defendant in *Easter* as follows:

"First, the court told [the] defendant that if he proceeded without counsel and misbehaved, he would lose his rights to a closing argument. Second, the court warned [the] defendant that if he did not present a closing argument—which would occur if [the] defendant misbehaved as he already had five times during the trial—he was likely to lose his case. Third, the court warned [the] defendant that, in light of the fact that [the] defendant had no legal training, he likely was not aware of the legal contours that he would have to navigate during closing argument."

241 Or App at 585.

criminal justice system can support a finding that, under the totality of the circumstances, the defendant adequately understood the risks of self-representation. *Id.* In reaching that conclusion, we considered several factors, including the defendant's "extensive experience with the criminal justice system," the fact that the defendant *had* obtained counsel in that case, the defendant's opportunity to observe firsthand some of the services that an attorney could provide, and the court's warnings to the defendant that proceeding without counsel would be a bad idea. *Id.* at 584-85.

In this case, the state contends that defendant understood the risks inherent in self-representation for similar reasons. Defendant was familiar with the criminal justice system—he had 12 prior convictions. Moreover, the state notes that defendant *was* appointed counsel in this matter and continued to insist that the court provide him with counsel. *See Easter*, 241 Or App at 584 ("[A] defendant's request for retained counsel supports an inference that the defendant understands the risks of self-representation." (Citing *State v. Brown*, 141 Or App 156, 163, 917 P2d 527, *rev den*, 323 Or 691 (1996).)).

The facts of this case, however, are not so similar to *Easter* as to allow us to conclude that, under the totality of the circumstances, defendant understood the risks of self-representation.[7] Defendant did not have the benefit of representation for any portion of his trial. Thus, he was unable to

---

[7] Indeed, a history of prior convictions is not necessarily enough to show that a defendant understood the risks of proceeding without counsel. Many defendants are repeat offenders, and we have previously recognized that more than a history of criminal offenses is necessary to establish a basis for a knowing waiver of counsel, even for a defendant with prior valid waivers. In *State v. Mendonca*, 134 Or App 290, 894 P2d 1247 (1995), where the state argued that the defendant had appeared frequently in the Josephine County courts and where we had previously held that the defendant had validly waived counsel, we nevertheless rejected an argument that knowledge and waiver should be imputed to the defendant:

"It may be true, as the state argues, that [the] defendant would have declined counsel even if the issue had been adequately discussed with her at trial. However, the trial court had an obligation to assure itself on the record before trial that [the] defendant was adequately informed about her right to counsel, including the risks involved in appearing before a jury without counsel, and that she was voluntarily proceeding without counsel. The failure to do that is reversible error."

134 Or App at 293 (citing *Meyrick*). Making such a record is no less important when a waiver is to be implied from the defendant's conduct.

experience "first-hand some of the services an attorney could provide" in this case. *Easter*, 241 Or App at 585. Further, at no relevant point did the trial court warn defendant of the specific disadvantages of representing himself or that self-representation would be unwise or detrimental to his case. *Cf. id.* (concluding that the defendant understood the risks of self-representation when "the trial court was able to tailor some specific warnings to [the] defendant concerning his decision to waive counsel and observe [the] defendant's response to those specific warnings to determine whether [the] defendant knowingly waived his right to counsel"); *Erb*, 256 Or App at 423 ("The court's statement that [the] defendant 'may be at a disadvantage without a lawyer' and [the] defendant's acknowledgement that she 'may be' do not demonstrate that [the] defendant adequately understood her right to counsel."). And, although it is true that defendant is familiar with the criminal justice system, there is insufficient evidence in the record from which we could conclude that his past experience, alone, can support a finding that he adequately understood the risks of self-representation in this case.[8]

The dissent rejects any need for ensuring that a defendant understands the risks of self-representation in an implied waiver case, arguing that such warnings are only needed when a person does not want a lawyer. According to the dissent, "[a] person who wants a lawyer, just not the *present* lawyer, already knows the risks of proceeding without a lawyer." 277 Or App at 856 (DeVore, J., dissenting) (emphasis in original). That logical leap is not necessarily well-founded without more information; wanting a lawyer and understanding the risks of proceeding without one are not necessarily the same thing. Moreover, while the delivery of such warnings may well feel different in a case where a defendant does want a lawyer, the purpose of the warnings is simply different, not nonexistent. Where a defendant wants to proceed without counsel, the warnings serve to establish a basis on the record for concluding that the defendant understands what he is giving up and nevertheless

---

[8] For instance, the record is silent as to whether any of defendant's prior convictions had gone to trial. *Cf. Easter*, 241 Or App at 584 (evidence in the record that at least one of the defendant's felony convictions had gone to trial).

wants to do so anyway. Where a defendant wants a lawyer but engages in conduct that he has been warned will result in no further appointments of counsel, the warnings serve to establish a basis on the record for concluding that the defendant understood the potential consequences to which his conduct would subject him before engaging in that conduct.

Further, contrary to the dissent's assertions, 277 Or App at 857 (DeVore, J., dissenting), defendant did not "demonstrate[] that he knew what attorneys were supposed to do." His complaints about his various attorneys being too busy, not keeping him sufficiently updated, and lacking "gusto" or confidence in his case demonstrate that he lacked a realistic sense of the attorney's role and, more importantly, fail to establish that he understood the risks of proceeding without counsel. In order to provide a constitutionally sufficient basis for implying a waiver of the advantages of having counsel based on a defendant's conduct, the need to establish that a defendant knows what he is giving up is arguably more, not less, important than when a defendant insists on proceeding without counsel. In such situations, where the court is implying waiver of a constitutional right in the face of a defendant's protestations, more is required than the protestations themselves.

The state also argues that defendant's case is controlled by our decisions in *Spry* and *Hussin*, both of which involved defendants who serially sought new counsel because of dissatisfaction with appointed counsel. In *Spry*, five attorneys had been appointed to represent the defendant between the date of his arrest and the 60-day trial deadline mandated by ORS 136.290.[9] 166 Or App at 28. Four of the attorneys had withdrawn because of the defendant's refusal to cooperate with them. *Id.* After the fifth attorney also withdrew, on the morning of trial, the court asked the defendant if he wished to represent himself. *Id.* The defendant did not wish to do that, but, based on his refusal to waive his right to a fast and speedy trial, the trial court declined to appoint substitute counsel and proceeded to trial that day. *Id.* at 29.

---

[9] ORS 136.290 provides, in part, that "a defendant shall not remain in custody pending commencement of the trial of the defendant more than 60 days after the time of arrest unless the trial is continued with the express consent of the defendant."

On appeal, we did not analyze whether there was a knowing and intelligent waiver, but rather, explained that the necessity of requiring the defendant to proceed without counsel was "completely the result of [the] defendant's refusal to cooperate with several court-appointed lawyers and his refusal to waive his right to trial in 60 days." *Id.* at 30. We noted that the defendant had been "repeatedly warned of the situation that he was creating" and "was given a reasonable opportunity to avoid the necessity of going to trial without counsel." *Id.*

Similarly, in *Hussin*, the defendant had been provided with two court-appointed attorneys. 90 Or App at 361. Shortly before trial, the defendant requested to substitute a third appointed attorney, based on the second attorney's lack of knowledge about the "Masonic Order." *Id.* The trial court presented the defendant with a choice: proceed *pro se* or with the assistance of the second court-appointed attorney. *Id.* When the defendant persisted in his request for an attorney with specialized knowledge, the trial court relieved his attorney without appointing substitute counsel. *Id.* at 361-62. On appeal, we upheld the trial court's decision to require the defendant to represent himself, concluding that "the court did not err when it did not inquire more fully whether [the] defendant knowingly, voluntarily and intelligently waived his right to counsel's assistance." *Id.* at 362.

Both *Spry* and *Hussin* upheld the trial courts' decisions not to appoint new counsel primarily on grounds of judicial efficiency, without inquiring into whether the defendants in those cases had knowingly and voluntarily waived their right to counsel. We understand our approach in those cases to be superseded by the Supreme Court's decision in *Langley. See Langley*, 351 Or at 666 ("If a trial court grants a motion to withdraw and does not appoint substitute counsel, thus requiring the criminal defendant to proceed *pro se*, we review for error of law whether the defendant has knowingly and intentionally waived his or her right to counsel."). Moreover, a waiver of counsel—even an implicit one—must be done knowingly and intentionally. *Id.* at 669.

Based on the foregoing, we conclude that the state failed to establish that defendant knowingly waived his

right to counsel through misconduct. The trial court erred in requiring defendant to proceed to trial without counsel and that error was not harmless. *See State v. Phillips*, 235 Or App 646, 656, 234 P3d 1030, *disposition modified on recons*, 236 Or App 465, 236 P3d 789 (2010) ("Where we are unable to determine what the outcome of a case would have been if the defendant had been represented by counsel instead of proceeding without counsel, the error is not harmless."). Accordingly, we reverse and remand for a new trial.

Reversed and remanded.

**DEVORE, J.,** dissenting.

The court's decision in this case requires, for the first time in our case law, that a defendant be warned (1) that further misconduct may be deemed to be an implied waiver of counsel *and*, as with an express waiver of counsel, (2) that to waive counsel may jeopardize the defendant's rights. Until now, the two warnings arose in different circumstances for different reasons. I am unconvinced that both warnings must be given in a case of implied waiver by misconduct, where, in part, the law implies the choice about counsel. I worry that the second warning, which is intended for an express waiver of counsel, ill-suits a misconduct case, in which the defendant has repeatedly said throughout the case that he wants an attorney. I question whether the absence of an unnecessary warning justifies reversal of a conviction.[1]

Both warnings are rooted in a common precept. Under Article I, section 11, of the Oregon Constitution, a defendant may voluntarily choose to proceed *pro se*, waiving the right to counsel, if that waiver is done knowingly and intentionally. *State v. Meyrick*, 313 Or 125, 133, 831 P2d 666 (1992). When a defendant consciously chooses to proceed without a lawyer, that standard is straightforward in its application. But, when a defendant demands another lawyer, while demonstrating by conduct an implied waiver of counsel, the standard becomes nuanced in application, as it does here.

---

[1] Defendant was convicted of first-degree assault and unlawful use of a weapon for striking a man's head with a tack hammer. The victim suffered an open skull fracture, memory loss, headaches, and seizures.

In the case of a deliberate choice to represent one-self, the requisite warning is obvious. Although no particular recital or "catechism" is required, something, such as colloquy on the record between the court and the defendant, should explain the risks of self-representation. The more relevant that the statements are to the defendant's situation, the better, in order to communicate "the dangers and disadvantages of self-representation." *Id.*

In the case of misconduct, the requisite warning is obvious, although different. The defendant must receive an advance warning that a repetition of misconduct may result in a conclusion by the court that the defendant has impliedly waived the services of an attorney, and that such an unwelcome conclusion could mean that the defendant would proceed without an attorney. *State v. Langley,* 351 Or 652, 670, 273 P3d 901 (2012). Misconduct is not found just from refusal to cooperate with counsel, inasmuch as a defendant has no legal duty to cooperate, but recalcitrant behavior toward counsel may become misbehavior evidencing an implied waiver of counsel. *Id.* at 668-70. If a prior warning has been given, then the court must examine the final circumstances, consider the defendant's side of a dispute about representation, and determine whether misconduct has indeed recurred. *Id.* at 672-73.

Everyone agrees that the case at hand is not a case involving a defendant making a conscious choice to discharge his lawyer and represent himself. This is not a case of express waiver. This is a case about waiver by misconduct.

Likewise, this is not a case in which the adequacy of a *Langley* warning about misconduct is in dispute. As the majority opinion recounts, the trial court advised defendant, when he tried to discharge his second lawyer, that it was unusual for a client to "get sideways" with two lawyers and to have done so may indicate that the trouble is with the client, not the lawyers. The court's statement may have been indirect or polite, but it communicated the problem. When that judge later relented and relieved the second lawyer, the judge warned defendant that his third lawyer would be his last. That warning was imperfect, to be sure, because our law requires the court, in the final event, to determine

whether, in fact, misconduct has recurred. *Id.* Nevertheless, the court's blunt warning communicated what counted. The warning about a last lawyer meant that, if defendant returned with unjustified complaints and conflicts with the third attorney, then the court could deem defendant to have impliedly waived an attorney. That was the warning missing in *Langley*, the absence of which required reversal and remand.

At oral argument on appeal in this case, defendant's counsel disclaimed any argument about the adequacy of a *Langley* warning on misconduct. Defendant's counsel frankly described what was *not* at issue:

> "[Defendant] was told by the trial court that his third court-appointed attorney was going to be his last. And the trial court entered an order to that effect. So we're not arguing that the defendant didn't engage in misconduct with his first two trial attorneys in terms of bar-complaining them, and *we're not arguing that the notice was inadequate under Langley.*"

(Emphasis added.) Instead, defendant argued that he did not engage in misconduct the last time. And, defendant argued that the trial court had erred by failing to give defendant a *Meyrick* warning about the dangers of electing to represent oneself.

It is defendant's *Meyrick* argument that the majority accepts.[2] The majority determines that, even if a *Meyrick* warning had been imparted just before releasing the last attorney, the *Meyrick* warning about self-representation came too late; it should have been made *earlier* as a part of the warning that misconduct will be deemed waiver. In that way, defendant would be better warned about the significance of losing a lawyer due to misconduct, before choosing

---

[2] The majority allows that, on the eve of trial, the court engaged in colloquy with defendant to explain the steps of trial. After impressing defendant with the complexity of a "do it yourself" trial, the court then asked if defendant still wanted the court to release attorney Bernstein. Defendant said that he did. Although I will suggest that a *Meyrick* warning was not needed for this defendant, I concur that, if a *Meyrick* warning were required here, the "DIY" advice did not suffice. That advice failed to warn defendant about the evidentiary or procedural objections that might be overlooked or about the other disadvantages of representing himself.

to engage in the last recurrence of misconduct. As for timing, the majority's point is imminently reasonable.

There are, however, difficulties in combining *Meyrick* and *Langley* warnings—difficulties that are both conceptual and case-specific. The conceptual strain is apparent in our reference to what must be voluntary and knowing. Although a defendant's waiver must be found to be voluntary and knowing, a case of express waiver involves a conscious choice whether to proceed without representation, while a case of implied waiver involves *behavior* that is construed by the court as a matter of law to represent an implicit, even if unthinking, choice to proceed without counsel. An express waiver is a deliberate decision about representation; an implied waiver is deliberate misbehavior that is not necessarily or consciously directed toward rejection of representation. An express waiver involves a situation in which a defendant does not want a lawyer. An implied waiver involves a situation in which a person still wants a lawyer. A person who does not want a lawyer needs to be warned of the risks of proceeding *without* a lawyer. A person who wants a lawyer, just not the *present* lawyer, already knows the risks of proceeding without a lawyer. There are different reasons for the different warnings, based on different situations.

Defendant complains that he was not warned of the risks of self-representation, and the majority agrees. Unlike *pro se* applicants, however, defendant did not ask to represent himself. This was not a case of express waiver for which a *Meyrick* warning is required. Even when *Meyrick* properly applies, the court looks not to a "catechism" or litany of recitals but to the totality of the circumstances to determine whether a defendant has had reason to know what attorneys do and to know the risk of self-representation. *Meyrick*, 313 Or at 134. Among the circumstances, the court may consider the defendant's prior experience with the criminal justice system.

In one case, where a defendant asked to release his attorney during trial and the court advised that it was a "bad idea," we considered the defendant's nine prior convictions as part of the circumstances that made his express

waiver knowing. *State v. Easter*, 241 Or App 574, 584, 249 P3d 991 (2011). Unlike the defendant in that case, this defendant did not ask to proceed *pro se*, so he did not need to be told it would be a bad idea. This defendant understood the importance of an attorney. This defendant had 12 prior convictions, had been represented in this case by several attorneys for one and one-half years, and demonstrated that he knew what attorneys were supposed to do. He did not need to have been told in earlier hearings that he needed an attorney or that he would be at risk without one.

Nothing in this record suggests that defendant did not already understand the dangers of being unrepresented. Quite to the contrary, he complained that his first attorney was too busy to prepare. He complained that his second attorney had not kept him updated and that medical records still needed to be obtained. And, among other things, he complained that his third attorney had no "gusto" and lacked confidence in his case. Throughout hearing after hearing, defendant repeatedly demonstrated that he well knew that he was in jeopardy without an effective attorney. Under the totality of these circumstances, this defendant did not need a *Meyrick* warning, and, for that reason, he did not need a *Meyrick* warning in conjunction with a prior *Langley* warning.

In the last hearing just before trial, the court did what it must do. It stopped to examine—and struggle—with the particular circumstances at hand before concluding that defendant had made an implied waiver. As before, defendant urged that there had been a breakdown in the attorney-client relationship. Defense counsel explained that defendant believed that counsel had "no faith and confidence * * * in defending him." Defendant had threatened again to file a bar complaint if counsel did not withdraw.[3] In addition, counsel attested that defendant had said something leading him to the conclusion that he could not put defendant on the stand. Counsel said, however, that this ethical problem was not a matter of proffering false testimony.[4] Whatever

[3] The court found the threat insufficient in itself to create a conflict requiring a new attorney.

[4] In an effort to find some solution to an elusive, unspecified ethical problem and to avoid a need to discharge counsel, the court, at one point, asked defendant

the issue was, it remained a mystery to the judge, as it did during oral argument on appeal.

After exploring options, the trial court summed up the situation, ruling:

"THE COURT: Okay. Now, then with the defendant making it clear that he wishes to have Mr. Bernstein removed from the case and it having also been made clear to the court that Mr. Bernstein's withdrawing due to an ethical concern and *also* in light of the history of the case the— which shows that [defendant] had Mr. Kovac originally.

"That lawyer withdrew under *similar circumstances in terms of difficulties with the client*, the client wanting him off and then *the same thing* occurring with Mr. Lyons and apparently Bar complaints being filed against both of them.

"The defendant being told by the presiding judge that this was his last attorney. We're now going through *a repeat of what occurred with the first two lawyers* plus we have now an additional ethical factor to consider.

"Let me visit the point where [defendant] has not only asked for his attorney to withdraw, but he has waived his right to counsel in light of *what's occurred with all three of the attorneys*.

"So that request is granted * * *."

(Emphases added.) Shortly thereafter, the court clarified that it had found implicit waiver.

Where a court makes an express finding—in this instance, a finding of implicit waiver—we understand the court to have resolved factual disputes consistently with its ultimate conclusion. *See Ball v. Gladden*, 250 Or 485, 487, 443 P3d 621 (1968). Therefore, when finding implicit waiver, the court indicated that it regarded defendant's dealings with counsel—whether the recurring dissatisfaction with

whether he might keep attorney Bernstein and forgo taking the stand. Defendant insisted, however, on releasing Bernstein, with whom defendant was displeased. Oddly then, defendant did not choose to testify, even when proceeding *pro se* and unconstrained by an attorney's ethics. The significance of all that is unclear. The purported choice between testifying and being represented would seem quite questionable, if the choice had stood alone, if the case had involved no misconduct, and if the court were not releasing Bernstein for a recurrence of the prior problems. *See Langley*, 351 Or at 672-73 (forcing erroneous choice on defendant).

counsel or the newly added ethical problem—as matters of misconduct. Such conduct was more than a passive lack of cooperation with counsel. *Langley* had held that mere noncooperation would not be misconduct. 351 Or at 668-69. This was "more" because defendant actively interfered with representation by filing bar complaints, he rendered his relationships with three lawyers unworkable, and he added an unexplained ethical issue. In the end, contrary to defendant's argument, the record supports the trial court's conclusion of continued misconduct even through the last lawyer relationship.

After the trial court reached its conclusion, the court returned to the question whether defendant wanted a lawyer. As the majority recounts, defendant replied, "I would ask for another lawyer, but you guys have pretty much made it clear that I'm not getting another lawyer." The court indicated defendant understood correctly, referring to the court's earlier warning about the last lawyer. Even then, defendant insisted:

> "[DEFENDANT]:   I would like—I would like a lawyer.
>
> "THE COURT:   You would like to have another lawyer.
>
> "[DEFENDANT]:   Yes."

Still later, at the end of the proceeding, defendant interjected one last time:

> "[DEFENDANT]:   All right. Oh, I just—I just wanted to make sure through the court on the record that you did deny an attorney to me, correct?
>
> "THE COURT:   Correct."

Stark though the denial may be, defendant made unmistakable his desire to be represented by counsel and *not* to proceed *pro se*. This desire for counsel was the very same desire that he had demonstrated throughout each of the hearings involving changes in his representation from attorneys Kovac to Lyons to Bernstein. After twelve prior convictions, defendant did not need to be told that he needed a lawyer or that he would be in jeopardy without one. In this case, he did not need a *Meyrick* warning, whether early or late in the case.

Today's decision now requires a combined warning, drawn from disparate circumstances, that takes our law further than it has gone before. Today, *Langley* incorporates *Meyrick*. A trial court now must warn a defendant that further misconduct may be deemed an implied waiver of counsel *and* that, if he does not want a lawyer, he should want a lawyer, in order to better protect his rights. This record shows, however, that defendant knew the importance of counsel all along. Unlike defendants that do not want a lawyer, this defendant always did. No *Meyrick* warning was needed. Certainly, an enhanced warning would not hurt. Protection of constitutional rights should always be promoted. As a matter of good practice, I welcome the majority's decision. But, where an inapt warning would have been a superfluous recital, its absence should not be grounds to reverse a conviction and require a new trial. For those reasons, I respectfully dissent.