Argued and submitted March 17; in Case Number 20CR19600, conviction on Count 5 reversed and remanded for entry of a conviction for second-degree criminal mischief, remanded for resentencing, otherwise affirmed; in Case Numbers 19CR73139, 20CR07884, and 20CR07901, reversed and remanded September 20, 2023

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SHIHAILY DOREEN SANTINI,
*Defendant-Appellant.*

Linn County Circuit Court
20CR19600, 19CR73139, 20CR07884, 20CR07901;
A176654 (Control), A176655, A176656, A176657

536 P3d 1055

After a jury trial in absentia, defendant was convicted of third-degree theft (Count 3) and first-degree criminal mischief (Count 5) after two incidents during which she took a prescription vitamin pill without permission and broke several windows. The trial court then revoked her probation in three unrelated previous cases. In three assignments of error, defendant appeals the trial court's acceptance of her waiver of presence at trial and denial of her motions for a judgment of acquittal on both the third-degree theft and first-degree criminal mischief charges. Defendant argues that although her waiver was voluntary, it was not knowing; that the state failed to adduce sufficient evidence to show that the single prescription vitamin pill she took had market value and was therefore "property"; and that the state failed to adduce sufficient evidence to show that the damage she caused totaled over $1,000. *Held*: First, The Court of Appeals concluded that because defendant appeared with counsel at the waiver hearing, preservation was required. Thus, the error was unpreserved, and plain-error review was precluded because the record permitted the inference that defendant understood the rights that she was waiving. Second, the court concluded that a rational factfinder could conclude that a market exists for even a single prescription vitamin pill as required to support a conviction for third-degree theft. Third, the court concluded that the state's evidence was insufficient for the jury to find that defendant caused damages exceeding $1,000 as required to support a conviction for first-degree criminal mischief. The inference that defendant caused "more than" $400 worth of damage alone did not support the further inference that the damage was, at minimum, specifically $601 more.

In Case Number 20CR19600, conviction on Count 5 reversed and remanded for entry of a conviction for second-degree criminal mischief; remanded for resentencing; otherwise affirmed. In Case Numbers 19CR73139, 20CR07884, and 20CR07901, reversed and remanded.

Michael B. Wynhausen, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief

Defender, Criminal Appellate Section, Office of Public Defense Services.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

In Case Number 20CR19600, conviction on Count 5 reversed and remanded for entry of a conviction for second-degree criminal mischief; remanded for resentencing; otherwise affirmed. In Case Numbers 19CR73139, 20CR07884, and 20CR07901, reversed and remanded.

**JACQUOT, J.**

In this consolidated appeal of three probation-revocation judgments (Case Numbers 19CR73139, 20CR07884, and 20CR07901) and a judgment of conviction (Case Number 20CR19600), defendant challenges her convictions in the latter judgment. After a jury trial *in absentia*, defendant was convicted of first-degree criminal trespass, ORS 164.255 (Count 1); third-degree theft, ORS 164.043 (Count 3); first-degree criminal mischief, ORS 164.365 (Count 5); and resisting arrest, ORS 162.315 (Count 6). Defendant raises five assignments of error. We describe only the first three because our resolution makes it unnecessary to reach the fourth and fifth. First, defendant argues that the trial court erred when it accepted a waiver of her presence at trial because, although it ensured that her waiver was voluntary, it failed to ensure it was knowing. Second, defendant argues that the trial court erred when it denied her motion for a judgment of acquittal (MJOA) on Count 3, third-degree theft, because the state failed to adduce sufficient evidence to show that the items defendant took were "property." Third, defendant argues that the trial court erred when it denied her MJOA on Count 5, first-degree criminal mischief, because the state failed to adduce sufficient evidence to show that the damage defendant caused totaled over $1,000.

Because the state's evidence was insufficient for the jury to find that the damage exceeded $1,000, in Case Number 20CR19600, we reverse defendant's first-degree criminal mischief conviction, remand for entry of a second-degree criminal mischief conviction and for resentencing, and otherwise affirm. In Case Numbers 19CR73139, 20CR07884, and 20CR07901, we reverse and remand.

Defendant's charges arise from two incidents at her aunt's home. First, after being asked to leave the home, defendant refused and instead locked and barricaded herself in a bedroom, prompting her aunt to call the police. While in the bedroom, defendant took at least one of her aunt's prescribed vitamin D pills without permission. Police broke down the door and removed defendant from the residence. Second, later that day, defendant returned to the home and

broke a window in the front door, the front windshield of one car in the driveway, and both the front and back windshields of a second car. Defendant was subsequently charged with, among other things, third-degree theft for taking the vitamin D pill and first-degree criminal mischief for breaking the windows.

Following a trial in which defendant waived her appearance, defendant was convicted on four counts, including third-degree theft and first-degree criminal mischief. The court revoked defendant's probations after finding her in violation for committing new crimes related to the new criminal convictions.

## WAIVER

In her first assignment of error, defendant argues that the trial court erred in accepting the waiver of her presence at trial because, although her waiver was voluntary, it was not knowing.

The relevant facts are as follows. Approximately two months before defendant's trial, defendant's attorney filed a "Motion to Reevaluate at Oregon State Hospital, Request to Require Defendant to Appear and Determine if She Wants to be Present at Trial." In the motion, he explained that defendant had refused to cooperate with him or a hired mental status evaluator and requested that the court order that defendant be reevaluated at the Oregon State Hospital. However, "[i]f the court does not believe reevaluation is appropriate, then counsel requests to bring [defendant] out of her cell for her to *make a decision as to whether she wishes to be present in trial given the adverse position she would be placed in.*" (Emphasis added.) The trial court subsequently held two hearings prior to trial. At the second, according to the docket, the court denied defense counsel's request to have defendant reevaluated at the hospital and set a trial date. Transcripts of those hearings are not in the record for our review.

On the morning of trial, defendant refused to leave her cell, and deputies explained that they would need to use force to bring her to court. Defendant's attorney asked if the deputies wore body cameras and then stated, "I would be

okay as her counsel if you were to record her stating" her waiver. The trial court explained that it needed defendant on record waiving her right to appear and had defendant brought to the jail courtroom. The trial court then remotely engaged in a colloquy with defendant about her waiver:

"THE COURT:   Alright. So I've been told that you—well, we had a discussion a while back where you had indicated that you wanted a trial and that you wanted to be present at that trial. Do you remember that hearing that we had?

"THE DEFENDANT:   Yes, Your Honor.

"THE COURT:   Alright. And so I'm being told this morning that you don't wish to appear at trial. Is that correct?

"THE DEFENDANT:   Yes.

"THE COURT:   Okay. And so do you wish to waive your right to appear at trial?

"THE DEFENDANT:   Yes, Your Honor.

"THE COURT:   But do you still wish to have a trial?

"THE DEFENDANT:   No. I waived my right, so no.

"THE COURT:   Well, there's a difference. Your—

"THE DEFENDANT:   It's my prerogative. I changed my mind. It's a no. We covered that.

"THE COURT:   No, no. I understand, [defendant], but there are two things that we're talking about. One is your right to have a trial at all, or rather—

"THE DEFENDANT:   I waive my rights.

"THE COURT:   Do you want to enter pleas to the charges?

"THE DEFENDANT:   There is no plea.

"THE COURT:   Alright. But you're waiving your right to appear at the trial?

"THE DEFENDANT:   Yes."

Defendant, neither personally nor through counsel, contested the validity of her waiver with the trial court.

Defendant now argues on appeal that her waiver was not made knowingly. According to defendant, the record insufficiently established that her waiver was knowingly made, because it failed to show that the court communicated any of the risks or consequences of waiving her right to be present at trial, especially with regard to how it would affect her other trial rights. Additionally, per defendant, the record did not establish "that she had any prior knowledge of the risks of a trial *in absentia*," because, "as far as the record shows, all her prior convictions resulted from pleas and not trials."

A criminal defendant has a fundamental constitutional right to be present at trial. *State v. Peltier*, 318 Or App 267, 273, 508 P3d 567, *rev den*, 370 Or 197 (2022). However, the defendant may waive that right if the waiver is both voluntary and knowing. *Id.* "Whether a defendant has knowingly and intentionally waived his right to be present at trial is a question of law that we review for legal error." *Id.* at 272. A waiver is knowing if the defendant is aware of the right to be present and understands the risks of not attending. *Id.* at 273. Those risks include the fact that the trial will proceed without the defendant and "the impact on the defendant's other rights" that will result from their absence. *Id.* at 274.

We prefer that the trial court engage in a colloquy on the record to establish that a waiver is made knowingly, but "we will also affirm a trial court's acceptance of a defendant's waiver where, under the totality of the circumstances, the record reflects that the defendant knew of the right [to be present] and understood the risks." *Id.* at 273-74 (internal quotation marks and citations omitted; brackets in original). "Whether there has been an 'intentional relinquishment or abandonment of a known right or privilege will depend on the particular circumstances of each case, including the defendant's age, education, experience, and mental capacity' as well as the charge, possible defenses, and other relevant factors." *Id.* at 273 (quoting *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992)).

We begin with preservation. Defendant acknowledges that she failed to object to the sufficiency of her waiver but argues in her opening brief that preservation is excused

in this context. Alternatively, she seeks plain-error review. ORAP 5.45(1). The state disagrees that preservation is excused, pointing to our decision in *Frost v. State of Oregon*, 320 Or App 753, 514 P3d 1182 (2022), *adh'd to as modified on recons*, 324 Or App 295, 525 P3d 98 (2023)—decided after defendant filed her opening brief—to argue that preservation rules do apply to personal-presence claims and, here, preservation is not excused because defendant's counsel was present and could have objected to the sufficiency of the waiver. The state then argues that the record is insufficient for plain-error review. Specifically, the state contends that the waiver colloquy between the court and defendant on the morning of trial establishes that they had a prior discussion about defendant's trial rights, supporting competing inferences about defendant's knowledge of the rights she was waiving and precluding plain-error review.

In a subsequent memorandum of additional authorities, defendant agrees that in *Frost*, "this court held that a violation of the right to be present for trial is subject to the preservation requirement." However, she notes that *Frost* "also held that such an error constitutes plain error that this court should exercise its discretion to correct." Additionally, defendant notes that in *State v. Reed*, 247 Or App 155, 163, 268 P3d 756 (2011)—a case concerning the *pro se* defendant's waiver of the right to counsel—we held that because a probation-violation hearing is a critical stage in a criminal prosecution, and the state has the burden of establishing a valid waiver, a defendant is not required to provide a transcript of each hearing to show that their waiver was invalid. Accordingly, defendant argues that she was not required to provide a transcript of the prior discussion between her and the court to show that her waiver was invalid.

The state filed a response to appellant's memorandum of additional authorities, stating that it is not arguing that defendant had to provide all relevant transcripts. Rather, the state noted it was arguing that *Reed* is inapposite because here, unlike in *Reed*, preservation is not excused, and any review must be for plain error. Further, the state argues that because the court and defendant acknowledged a prior discussion about her trial attendance,

defendant expressly waived her right to attend, and defendant's counsel did not object, we can infer that defendant understood the risks of her waiver. That inference, according to the state, precludes plain-error review.

We conclude that preservation was required because defendant appeared with counsel at the waiver hearing and therefore had an opportunity to object. *See Frost*, 320 Or App at 758 (concluding that the post-conviction petitioner was required to preserve his claim that, under ORS 138.620(1), the court erred in failing to order his presence at the post-conviction trial where he had a prior opportunity to object through counsel and when his counsel appeared at prior hearings and discussed ORS 138.620 and whether petitioner would be appearing at the trial). Therefore, for us to consider the unpreserved error, it must meet the requirements for plain-error review.

We further conclude that the requirements for plain-error review are not met. For an unpreserved error to be plain and warrant consideration for correction, the error must be "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Here, the error is not apparent on the record. Defense counsel's earlier motion asked that if the court denies the request for reevaluation at the Oregon State Hospital, defendant be brought to court to make a decision about attending "given the adverse position she would be placed in." A hearing was held, and the trial court denied the reevaluation request. In discussing defendant's waiver, the trial court asked defendant if she remembered a discussion that they had "a while back where [she] had indicated that [she] wanted a trial and that [she] wanted to be present at that trial," and she answered, "Yes, Your Honor." The court then asked if it was correct that she wanted to "waive [her] right to appear at trial," and she responded, "Yes, Your Honor." Defense counsel did not object to the sufficiency of defendant's waiver but in fact suggested an even less stringent method of obtaining it. Defendant's waiver in the context of the entire colloquy with the court permits the inference that defendant understood from their

prior discussions the rights that she was waiving on the day of the hearing. As a result, the totality of the circumstances in the record supports competing inferences that preclude us from reviewing for plain error.

Our conclusion is not undermined by *Reed*, as that case is inapposite. The court in *Reed* was not engaged in plain-error review, while in this case we must determine whether the plain-error review requirements have been met. We conclude that—based on the record before us—they have not, and accordingly we affirm.

## THIRD-DEGREE THEFT

In her second assignment of error, defendant argues that the trial court erred when it denied her MJOA on Count 3, third-degree theft, because the state failed to prove that the items she took had market value, as required to support her conviction. On review of the denial of an MJOA, we view the facts in the light most favorable to the state and determine whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Street*, 317 Or App 1, 4, 505 P3d 425, *rev den*, 369 Or 705 (2022).

Defendant was charged with third-degree theft after taking at least one of her aunt's prescription vitamin D pills while she had locked and barricaded herself in her aunt's bedroom. The aunt testified that the prescription was for three or four pills to take before a blood test. At the close of the state's case, defendant moved for a judgment of acquittal on the grounds that the state had failed to offer evidence to show that the vitamin D pill she took had any value, as required for a conviction for third-degree theft. The trial court denied the motion, noting that a vitamin D pill clearly has value, even if infinitesimal, and third-degree theft does not require the state to prove any specific value.

We conclude that a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. To convict defendant of third-degree theft, the state had to prove that she stole "property" worth less than $100. ORS 164.043(1). To be considered property, the stolen item must have some value, "specifically, more than zero,

but less than $100." *State v. Waterhouse*, 359 Or 351, 354, 373 P3d 131 (2016); ORS 164.043(1); ORS 164.005(5) (defining property as "any article, substance or thing of value, including, but not limited to, money, tangible and intangible personal property ***"). The state is not required to prove a specific value but must offer enough evidence for the jury to reasonably infer that the property had "some value." *Waterhouse*, 359 Or at 361-62 (when a crime is based on a *de minimus* value threshold, such as greater than zero, the valuation is "provable by inference").

Defendant argues that the state must prove specifically that the stolen item had market value, requiring proof of "a market for the item in which willing buyers and sellers engage in arm's-length transactions in which the item is traded for value." *State ex rel Juv. Dept. v. Deford*, 177 Or App 555, 578, 34 P3d 673 (2001). According to defendant, without an established market, the market value becomes speculative, and speculative worth is insufficient to satisfy the definition of property. *Id.* at 578-79. Therefore, defendant argues, although a market exists for full and sealed bottles of vitamin D pills, the state needed to prove that there is a market for individual vitamin D pills. The state responds that the market value of a container of items is the aggregate value of the items it contains such that each individual item necessarily holds some fraction of the value. Therefore, because it is undisputed that a full and sealed bottle of pills has market value, the individual pills do too.

Defendant primarily relies on our decision in *Deford* to support her position. In *Deford*, a youth was charged with first-degree arson after lighting fire to a small stack of newspapers in his apartment building.[1] *Deford*, 177 Or App at 557. The newspaper was a free publication that was placed in the laundry room for residents to take as they wished. *Id.* at 575. The state presented evidence showing that the leftover newspapers were eventually taken to a recycling business that purchased newspaper in bulk for one penny per pound. *Id.* at 575-76. The youth argued that the state failed to show that the newspapers he burned had market value,

---

[1] The definition of "property" is the same for arson and theft. ORS 164.005(5) (providing definition of "property" for offenses against property).

as required to prove the charges, because it did not show a market for such small quantities of newspapers as opposed to large, bulk amounts. *Id.* at 577. We held that the state needed to prove that there was both a willing buyer and a willing seller of the small quantity, and because it did not establish that there was anyone willing to expend the effort to transport and sell such a small quantity, it failed to show market value. *Id.* at 580-81.

Here, unlike the newspapers in *Deford*, prescription pills are sold and bought in small quantities. The victim testified that the prescription from which defendant took the pill was for only three or four pills. Prescription pills are not given out to the general public for free. This means that a drug company sold, and the aunt or her insurance company paid for, three or four pills in a single transaction. It is reasonable for a factfinder to infer that the same could be true of one pill and that, therefore, a market exists for a prescription for even a single prescription vitamin D pill.

Therefore, we conclude that there is sufficient evidence from which the jury could infer that the vitamin D pill taken by defendant possessed some market value. Accordingly, the trial court did not err when it denied defendant's MJOA, and we affirm.

FIRST-DEGREE CRIMINAL MISCHIEF

In her third assignment of error, defendant argues that the trial court erred when it denied her MJOA on Count 5, first-degree criminal mischief. As previously explained, we view the facts in the light most favorable to the state and determine whether a rational factfinder could have found the elements of the crime beyond a reasonable doubt. *Street*, 317 Or App at 4. We conclude that the state did not adduce sufficient evidence to show that defendant caused over $1,000 in damages, as required to uphold her conviction.

Shortly after police had removed defendant from her aunt's home, defendant returned to the residence. The home's front door had a large oval window, and there were two cars parked in the driveway. Defendant broke the door window, the front windshield of one car, and both the front and back

windshields of the second car. Defendant was arrested soon after and charged with first-degree criminal mischief.

To support a conviction for first-degree criminal mischief, the state had to show that defendant intentionally damaged another's property in an amount exceeding $1,000. ORS 164.365(1)(a)(A). "[D]amage to personal property is generally measured by the difference between its value immediately before and after the injury" or, alternatively, by "the reasonable cost of repairs to put the property in substantially the same condition it was in prior to the injury." *State v. Crace*, 26 Or App 927, 932, 554 P2d 628 (1976).

During the trial, the state adduced limited evidence regarding the monetary amount of damage caused by defendant. Ultimately, the only evidence presented to the jury was the victim's testimony that she bought an "inferior" replacement door for $200 because she was told an equivalent door would cost too much and paid $200 in deductibles for the damage to the two cars, along with photos of the damage to the door and cars from the scene.[2]

Defendant moved for a judgment of acquittal, arguing that the state only presented evidence that the victim paid $400 for the damage, including $200 for the door and $200 in deductibles for the cars. The trial court denied defendant's MJOA, stating that the value of damage was an issue to be argued, but, although not "necessarily strong," evidence that replacing the door was cost prohibitive, along with photos of the damage to the newer vehicles, was sufficient for the jury to infer that the damage was over $1,000.

At issue is whether the testimony and photos provided enough evidence for the jury to permissibly infer that the damage was over $1,000, or if it crosses the line

---

[2] The victim also testified that she was told by an unidentified salesperson that the cost to replace the glass in the door exceeded $1,000 because it was a "special order." Defendant objected based on hearsay, and eventually the trial court sustained the objection and allowed the testimony only for its effect on the listener to explain why she bought an "inferior" door, not for its truth. Accordingly, the jury could not consider the $1,000 figure to be evidence of the actual amount of damage that defendant caused. *See State v. Hren*, 237 Or App 605, 607-08, 241 P3d 1168 (2010) (testimony by defendant in theft prosecution that store clerk said she could take the property could not be offered for its truth—that defendant was actually entitled to take the property—but could be offered to show she reasonably believed she was entitled).

to impermissible speculation. "The line between permissible inference and impermissible speculation is not always a bright one," but the line is drawn by logic. *State v. Guckert*, 260 Or App 50, 56, 316 P3d 373 (2013), *rev den*, 354 Or 840 (2014). "[E]vidence is insufficient if it requires the stacking of inferences to the point of speculation," and "even in the most difficult-to-try cases, speculation cannot be permitted to substitute for evidence." *State v. Bivens*, 191 Or App 460, 468, 470, 83 P3d 379 (2004).

In this case, the line between first-degree criminal mischief (a felony) and second-degree criminal mischief (a misdemeanor) lies entirely upon the monetary amount of damage. *See* ORS 164.365(1)(a)(A) (first-degree criminal mischief requires damage in an amount exceeding $1,000); *State v. Jones*, 298 Or App 264, 269-70, 445 P3d 358, *rev den*, 365 Or 658 (2019) (interpreting second-degree criminal mischief statute, ORS 164.354(1)(b), to mean that if the damage is caused intentionally, second-degree criminal mischief does not require evidence of a specific value). At no point did the state introduce evidence about the difference in value or the cost of replacing or repairing a car window or the front door. It instead relied entirely on photos of the cars and the victim's testimony regarding the door and car deductibles to show that the damage was over $1,000. The jury could reasonably infer that the damage to the car windows exceeded the $200 deductibles because a deductible serves to limit the amount a policy holder pays when damage is in excess of that deductible, and that because the door the victim bought was "inferior," an equivalent replacement door would cost more than $200. *See Skeeters v. Skeeters*, 237 Or 204, 214, 389 P2d 313, *reh'g den*, 237 Or 204 (1964) (although a jury cannot be permitted to speculate, it may rely on common experience to draw inferences). However, the inference that defendant caused "more than" $400 alone does not support the further inference that the damage was, at minimum, specifically $601 more.

When a crime specifically requires the state to prove a certain monetary threshold, "the state's burden cannot be relaxed to the point where less evidence equates to more proof by giving the state the benefit of a broader

range of imaginable possibilities." *Bivins*, 191 Or App at 471. Without further evidence from the state regarding the amount of damage, "[n]o predicate facts assist in informing any inference, and any conclusion would constitute speculation or guesswork." *Id.* at 469-71 (holding evidence insufficient to elevate assault from misdemeanor to felony because, although the defendant's children were present in a small house during a loud argument in which the defendant struck the children's mother, without more evidence the jury could not infer that the children actually heard or saw the assault).

We therefore conclude that the state's evidence was insufficient for the jury to find that defendant caused damages exceeding $1,000. Accordingly, as defendant requests, we reverse defendant's first-degree criminal mischief conviction and remand for entry of a conviction for the lesser included offense of second-degree criminal mischief and for resentencing. *See State v. Wiggins*, 272 Or App 748, 750, 358 P3d 318 (2015) (second-degree criminal mischief is a lesser included offense of first-degree criminal mischief); ORS 164.354(1)(b) (a person commits second-degree criminal mischief if they "intentionally damage[ ] property of another"). As a result, the probation-violation judgments are reversed and remanded to allow the court to reconsider its probation violation determinations.

In Case Number 20CR19600, conviction on Count 5 reversed and remanded for entry of a conviction for second-degree criminal mischief; remanded for resentencing; otherwise affirmed. In Case Numbers 19CR73139, 20CR07884, and 20CR07901, reversed and remanded.